396 A.2d 414

**COMMONWEALTH of Pennsylvania**

v.

**Anthony BOND, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 30, 1977.

Decided Dec. 22, 1978.

312

Timothy J. Savage, Philadelphia, for appellant.

Michael R. Stiles, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This appeal is from judgments of sentence on convictions of robbery, aggravated assault, possession of an instrument of crime, possession of a prohibited offensive weapon, and carrying a firearm without a license.[1]

The Commonwealth's evidence was as follows. On March 13, 1975, appellant entered a bar in Philadelphia, approached the bartender, who was behind the counter, pointed a gun at him, and demanded money from the cash register. The bar's owner, Clifford Howell, was seated at a booth nearby. Seeing the bartender empty cash from the register, he went over to the counter and saw that appellant had a gun. A struggle ensued; appellant's gun clicked two or three times but did not go off. Howell wrested the gun from appellant, beat appellant on the head with it, and ran to call the police. Appellant jumped up and ran to the door. Howell then got his own gun and shot appellant in the buttocks. Appellant was apprehended a few blocks away and was identified immediately by Howell, who testified that he knew appellant from around the neighborhood and that appellant had been in the bar before.

Appellant testified as follows. He entered the bar without a weapon and spoke to the bartender, who was to pay him off for a numbers bet. When the bartender was unable to make the payment, an argument ensued. Appellant went to the door to leave but was shot without provocation by Howell. Two eyewitnesses, patrons in the bar and friends of appellant's, corroborated this testimony.

■ Appellant makes various arguments for a new trial or discharge. We consider only one, which we find requires a new trial.[2]

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. §§ 3701, 2702, 907, 908, and 6106 respectively.

2. Appellant requests broader relief, that is, arrest of judgment and discharge, arguing that the lower court should have granted his demurrer to the charge of aggravated assault against Howell, because the evidence showed only assault against the bartender. During the struggle that followed Howell's intervention, however, appel-

■ The Commonwealth introduced evidence, over appellant's objection, that about a month before the robbery appellant and another man had come into the bar and had told Howell that he would have to donate $20 a week to the Muslim Temple Organization, Chapter Twelve; that Howell understood this to be a threat; and that on the basis of this incident Howell filed extortion charges against appellant, which were unresolved at the time of trial. Counsel stipulated that investigation had shown that appellant was in no way connected with the Muslim Temple Organization.

It is black letter law that evidence of one crime is inadmissible against a defendant being tried for another crime because the fact of the commission of one offense is not proof of the commission of another. See *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971). However, there sometimes exist special circumstances which operate as exceptions to the general rule and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. See *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.

*Commonwealth v. Peterson*, 453 Pa. 187, 197–98, 307 A.2d 264, 269–70 (1973) (footnote omitted).

lant's gun clicked several times, sometimes when it was pointed at Howell. This is sufficient evidence to show an aggravated assault of Howell.

■■ The Commonwealth first argues that the evidence of appellant's alleged extortion attempt was admissible at appellant's trial for robbery because both it and the robbery were part of a "common scheme to deprive Mr. Howell of the proceeds of his business." Brief for Commonwealth at 9. Such a description of a "common scheme" reduces the requirement to meaninglessness: the Commonwealth has merely isolated one factor that the two incidents have in common—a desire for money—and has disregarded the words of *Commonwealth v. Peterson, supra*, that the incidents must be "so related to each other that proof of one *tends to prove the others.*" 453 Pa. at 197, 307 A.2d at 269 (emphasis supplied). Here, there was no causal connection shown between the two incidents.[3] *Compare, Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975) (defendant, fleeing scene of one crime, with police in pursuit, enters apartment and commits various other crimes in efforts to escape; all admissible); *Leonard v. United States*, 324 F.2d 911 (9th Cir. 1963) (defendant obtained Treasury checks payable to others, induced A to forge payees' endorsements, then induced B to obtain false credentials, cash checks and split proceeds with defendant; all admissible to show scheme); *State v. Toshishige Yoshino*, 45 Haw. 206, 364 P.2d 638 (1961) (defendant and others robbed A and obtained from him name and address of B as holder of another sum of money, proceeded to B's house and assaulted and robbed B; evidence of first robbery admissible in prosecution for second).[4]

3. In *Commonwealth v. Hude*, 256 Pa.Super. 439, 390 A.2d 183 (1978), we held that evidence that the defendant had offered to sell marijuana to an undercover agent some months prior to alleged sales of drugs to high school students was irrelevant in proving motive to sell to the students. We said:

> [W]hile monetary gain may have been a common motive between the alleged prior offer to sell and the subsequent alleged sales, there is no causal connection between the two crimes and the occurrence of the first crime sheds no light on why or how the subsequent crimes charged occurred.

*Id.*, 256 Pa.Super. at 444, 390 A.2d at 185.

4. We note that the Supreme Court has sometimes used the "common scheme" formulation as synonymous with "modus operandi," a crim-

 The Commonwealth next argues that the evidence of the extortion attempt was admissible to show intent:

[T]he prior doing of *other similar acts*, whether clearly a part of a scheme or not, is useful as *reducing* the possibility that the act in question was done with innocent intent. II Wigmore, *Evidence*, § 302 at 200 (3d Ed. 1940) (emphasis supplied).

We cannot accept this argument, for two reasons. First, intent was not at issue in the case. Appellant did not seek to defend by acknowledging the incident and arguing that it was accidental or innocent. Second, the extortion and the robbery were entirely dissimilar actions. In explaining why a condition of admissibility is that the actions be similar, Wigmore says:

Thus, if A while hunting with B hears the bullet from B's gun whistling past his head, he is willing to accept B's bad aim or B's accidental tripping as a conceivable explanation; but if shortly afterwards the same thing happens again, and if on the third occasion A receives B's bullet in his body, the immediate inference . . . is that B shot at A deliberately . . . .

\* \* \* \* \* \*

[I]n order to satisfy this demand, it is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance.

*Id.*, at 196, 200 (emphasis in original).

*Accord, Commonwealth v. Raymond*, 412 Pa. 194, 194 A.2d 150 (1963) (requiring "crime of the same nature").

inal "signature," *McCormick on Evidence*, § 190 at 449 (Cleary Ed. 1972), to prove identity. *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975). *See Commonwealth v. Morris*, 258 Pa.Super. 24, 391 A.2d 653 (1978) (opinion in support of reversal by SPAETH, J., discussing cases). By no stretch of the imagination can the two incidents at issue here be deemed so similar as to permit the inference of identity, that is, the inference that whoever committed the first must have committed the second; furthermore, identity was not at issue in this case.

The Commonwealth finally argues that the evidence was admissible to show motive: because Howell defined the extortion demands (he paid no money), and lodged a criminal complaint against appellant, appellant had a motive to rob Howell.

 In *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976), the Supreme Court said:

[E]vidence of a distinct crime, even if relevant to motive, 'must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.' *Id.*, 465 Pa. at 524, 351 A.2d at 218–19.

We are doubtful that there is "sufficient ground" to believe that the robbery of Howell's bar grew out of a desire on appellant's part to punish Howell for his failure to pay extortion and for lodging the complaint. (We would see a stronger case if appellant were charged with a crime involving physical violence aimed at Howell himself in the first instance.) However, assuming that such a connection existed between the extortion and the robbery, and even assuming that the evidence was relevant to proving intent (although it was not), other considerations should nonetheless have barred its admission.

 In *Commonwealth v. Hude, supra*, we held that even though evidence of prior crimes might be relevant, its admission must be based on a balancing of several considerations: on the one hand, the actual need for the evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue; and on the other hand, the degree to which the jury would probably be roused by the evidence to overmastering hostility. *Accord, Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186, 191 N. 11 (1977); *Commonwealth v. Wright*, 259 Pa.Super. 293, 393 A.2d 833 (1978). If we undertake this balancing here, we find the following:

1. The Commonwealth's case was a strong one. Both victims testified fully and there was no issue concerning appellant's identity.

2. Appellant had not yet been convicted of extortion; the fact that Howell believed he was being threatened is not necessarily strongly probative of appellant's intent to extort.

3. The extortion was at best only weakly probative of the robbery, via the "motive" analysis. It should have been clear from the outset that the case would turn on credibility, and that the question of whether appellant had a motive to rob the bar (other than just to get money) would figure very little in the jury's decision on credibility.

4. Appellant's intent was not at issue. Had he, however, defended by arguing innocent intent, we should still be obliged to consider the Commonwealth's evidence of the prior crime to be more properly admissible *in rebuttal, not in its case in chief. Commonwealth v. Wright, supra*, 259 Pa.Super. at 299, 393 A.2d at 836, n. 8; *Commonwealth v. Hude, supra*, 256 Pa.Super. at 441–442, 390 A.2d at 184. Professor McCormick writes to this point:

> [W]hen the crime charged involves the element of knowledge, intent, or the like, the state will often be permitted to show other crimes in rebuttal, *after the issue has been sharpened by the defendant's giving evidence of accident or mistake, more readily than it would as part of its case in chief* at a time when the court may be in doubt that any real dispute will appear on the issue.
>
> *McCormick on Evidence, supra*, § 190 at 452 (emphasis supplied).

On balance, we think it clear how the jury was likely to use the extortion evidence. On the one hand, it was most unlikely that the jury would use the evidence to find that appellant had a motive to rob the bar, or that because he tried to extort, he must also have done the robbery with intent to rob. On the other hand, it was most *likely* that the jury would use the evidence to decide that because appellant tried to extort, he was a bad person and as such was likely to

commit robbery. Such an inference is not permissible. *See Commonwealth v. Peterson, supra; Commonwealth v. Hude, supra; Commonwealth v. Bradley,* 243 Pa.Super. 208, 364 A.2d 944 (1976). Nor, in a case involving credibility, is it harmless. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

Reversed, and a new trial ordered.

CERCONE, J., concurs in the result.

PRICE, J., dissents.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.